**UNITED STATES of America**

v.

**Joseph G. DiBONA, et al.**

**Civ. A. No. 83–1311.**

United States District Court, E.D. Pennsylvania.

Dec. 7, 1984.

Dennis C. Egan, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Bernard L. Shapiro, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

This matter comes before the Court on defendants' motion to appeal the Report and Recommendation of August 29, 1984 by Magistrate Naythons in which the Magistrate found that an FBI report that was in the possession of the government was (1) not comprised of grand jury materials in violation of Fed.R.Crim.P. 6(e) and (2) was not the type of material sought to be protected from disclosure by Rule 6(e).

The defendants seek to suppress any evidence that the government presented to the grand jury which indicted the defendants in an antecedent criminal matter.

*Factual Background*

Defendants DiBona and Rights have already entered guilty pleas in an antecedent criminal matter for, *inter alia*, filing false statements with the United States government. As part of the arrangement for their guilty pleas, the charges against RDL, Inc. were withdrawn. The govern-ment also instituted a civil action against all three defendants for filing false claims for payment on defense contract work that was not performed.

The defendants, in the course of conducting discovery, filed a motion to compel discovery of various reports in the possession of the government's attorney, believing that this information was derived from the grand jury proceedings in contravention of Federal Rules of Criminal Procedure 6(e). It is their contention that this civil complaint is based on illegal grand jury material.

The materials in question were contained within an FBI report which summarized the investigation. The government objected to producing this information claiming that it was privileged as the work product of an attorney prepared in anticipation of trial and that it contained information from confidential sources.

The FBI agent who prepared the report was deposed and stated that the information was compiled while the grand jury investigation was still in progress. He further stated that his report may have included materials derived from information received by the grand jury. The Magistrate directed the government to produce the report for an *in camera* inspection to determine if it contained "grand jury material."

Rule 6(e) prohibits the use of grand jury materials in subsequent litigation except in limited circumstances. Rule 6(e)(3)(C)(i) provides that the government may disclose grand jury material in its possession when directed to do so through a court order. It is not disputed that the United States Attorneys did not apply for a court order directing release of this evidence.

The Magistrate's review of the lengthy FBI report found three references to matters that may have involved grand jury materials. The first reference was to a summary of RDL, Inc.'s stock allocations. These records were produced as the result of a subpoena issued by the grand jury. The Magistrate, citing the holding of *Unit-*

ed States v. *Interstate Dress Carriers, Inc.*, 280 F.2d 52 (2d Cir.1960) found that financial records of RDL, Inc. were created for purposes independent of the grand jury process and were not "grand jury materials" under Rule 6(e).

The second and third references were to statements given by witnesses who were interviewed by the FBI. These witnesses may have also testified before the grand jury but the information within the FBI report did not reveal with certainty if that occurred. The Magistrate found that, in any event, these statements by the witnesses were derived from an independent FBI investigation and not from information received by the grand jury.

The defendants ask this court to examine the Magistrate's review and recommendation in light of the Supreme Court's decision in *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 103 S.Ct. 3133, 77 L.Ed.2d 743 (1983).

## DISCUSSION

The plaintiff in this action is the United States government and its interests are represented by attorneys in the Civil Division of the Justice Department. In the recent Supreme Court decision of *United States v. Sells Engineering, Inc.*, the Supreme Court held that attorneys in the Civil Division of the Justice Department may not have automatic access to and disclosure of grand jury materials in the possession of the prosecutors but must instead seek a court order for access to this evidence. *Sells* at 3147.

The Court's decision was based upon three main considerations all flowing from the historical policy of preserving grand jury secrecy. First, the court believed that if grand jury matters and information were disclosed to persons other than the prosecutor involved in the criminal proceeding it would diminish the willingness of witnesses to come forward and testify fully with candor. If a witness believes he may have to continuously appear before a myriad of judicial bodies investigating the subject he has information about, it may inhibit the citizen's desire to come forward and testify. *Sells* at 3142.

■ Second, because of the active role taken by the government's attorneys during a grand jury investigation, automatic disclosure may invite abuses of the process through manipulation of the grand jury to ferret out additional evidence useful in a civil suit. The grand jury has investigative powers not available to a civil attorney through normal discovery procedures. The use of a grand jury to elicit this information in a civil action is *per se* improper. *United States v. Proctor and Gamble*, 356 U.S. 677, 683–684, 78 S.Ct. 983, 986–87, 2 L.Ed.2d 1077 (1958).

And lastly, as a corollary to the previous point, if the government was allowed unlimited access to grand jury material, it would circumvent the carefully crafted and more limiting discovery rules imposed upon it in a civil action. *Sells, supra,* at 3143. Thus, *Sells* held that disclosure of grand jury material may only be made to a U.S. civil litigation attorney under a Rule 6(e)(3)(C)(i) court order.

Admittedly, the government did not seek a court order directing access to these materials, however, they contend that no order was necessary because the information in their possession is not grand jury material and hence does not fall under Rule 6(e) protection. The threshold question this court must decide is whether the evidence is in fact grand jury material within the meaning of Rule 6(e).

## A. What are "grand jury materials"?

■ Grand jury materials have been held to be only those materials which directly or indirectly reveal what transpired before the grand jury. *In re Grand Jury Matters (Catania)*, 682 F.2d 61, 63 (3d Cir.1982). Solely because evidence was presented to a grand jury does not render it "grand jury material" shrouded in the cloak of secrecy never to be used for any purpose ever again. The Third Circuit in *Catania* held that disclosure of information obtained from a source independent of the grand jury proceeding, although done so with the

purpose of ultimately using it before the grand jury, is not "grand jury material" and falls outside the scope of Rule 6(e). This type of evidence exists apart from and was developed independently of the grand jury procedure. *Catania* at 64.

*Catania* involved an FBI investigation into possible voter fraud in a local election. A grand jury was convened but no federal prosecution resulted from the inquiry. At the request of the Federal Grand Jury, the government moved *ex parte* for a 6(e) order allowing it to release the material in its possession to the local district attorney for use in matters before a state grand jury. After reviewing the materials, *in camera,* the district court found that the materials were not matters occurring before the grand jury and could be disclosed.

The evidence consisted of information which was presented to the grand jury but was developed by the FBI investigation into alleged voter fraud. This material included tape recordings and transcripts of monitored conversations, documents obtained without a grand jury subpoena, and a prosecution memorandum summarizing the information compiled by the FBI investigation. The district court held, and the Court of Appeals affirmed, that the disclosure of information obtained from a source independent of the grand jury proceeding is not a violation of Rule 6(e). *Catania* at 64.

Moreover, the *Catania* court found that the district attorney was without knowledge of whether the materials were ever even presented to the grand jury for consideration and, therefore, the danger that disclosure would reveal what transpired before the grand jury was greatly minimized.

B.  Was the Evidence a By Product of an Independent Investigation?

I.  The Summary of Stock Transaction Contained in the FBI Report.

The FBI report indicates that stock subscription records of RDL, Inc. were obtained by a Federal Grand Jury subpoena. These business records was not developed independently of the grand jury process,

but were the end result of the specific investigative tools the grand jury had at its disposal.

The Report and Recommendation concluded that although this information was the product of a subpoena, it was not grand jury material since its disclosure would not reveal the essence of what took place in the grand jury room. *Citing In re Grand Jury Investigation,* 630 F.2d 996, 1000 (3d Cir.1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981); *United States v. Interstate Dress Carriers, Inc.,* 280 F.2d 52 (2d Cir.1960). *Interstate* involved an application by the Department of Justice for an order allowing the Interstate Commerce Commission (ICC) to inspect business records that were in the possession of the government pursuant to a grand jury subpoena *duces tecum.* The ICC was acting within its statutory authority to request inspection of these records. The motor carrier objected to releasing the records arguing that they were grand jury materials.

The Court of Appeals held that (1) because the ICC possessed independent legal authority to review the carrier's financial records; (2) where the records are maintained in the normal course of business; and (3) where disclosure of the documents will not impinge upon the secrecy of the deliberative process, a court may grant an *order* to disclose grand jury materials.

■ We accept both the government's contention and the Magistrate's findings that a summary of the stock subscription records of RDL, Inc. does not reveal the inner workings of the grand jury process, we note that unlike the ICC in *Interstate,* plaintiff did not apply for a court order granting access to these materials. Interstate does not stand for the proposition that any evidence presented to a grand jury may be revealed so long as it doesn't show what transpired before it. Only information which is acquired independently of the grand jury process may be revealed without a court order and under Rule 6(e)(3)(C)(i) plaintiff should have sought an

order from the court providing for the disclosure of the stock subscription summary.

Even assuming, *arguendo*, that the summary of the stock subscription records does not provide the reader with any insight into the inter sanctuary of the grand jury proceeding, the use of the information violates a fundamental principal announced by the Supreme Court in the *Sells* decision, namely, automatic disclosure may invite abuses of the grand jury process [1] by allowing the government to bypass the normal discovery rules and procedures used in civil litigation.

Counsel for defendants argues that "grand jury material" should be suppressed and the complaint dismissed. Reported case law involving the use of illegal grand jury material in subsequent civil actions is scant. Our research has located only one reported case which occurred, appropriately enough, in this district. *Kocher Coal Company v. Marshall*, 505 F.Supp. 156 (E.D.Pa.1981) involved the use of grand jury material in an administrative proceeding by the Department of Labor to issue citations and fines against the plaintiff coal company. Plaintiff petitioned the court requesting an order declaring that the reliance on the grand jury material to issue a citation was unlawful and that the citation was invalid, null and void. *Id.* at 158.

The court refused to grant plaintiff's request stating that sufficient evidence was developed to show that the Department of Labor may have "sterilized the basis of the citation" through other evidence so that the citation would still be valid despite the subsequent illegal use of grand jury material. *Id.* at 159.

■■■ Merely because the plaintiff is in possession of grand jury materials does not mandate that the complaint be dismissed. Defendants must prove (1) that this information was used by the government, and (2) that it was essential evidence to aid them in stating a claim. Our own observa-

tion is that this information was not necessary nor would it have affected the legal results of any of the motions decided by this court to date.

The court will issue an appropriate order enjoining the government from any further use of this material, however, the order is not to be interpreted to preclude the government from using the discovery mechanisms available to it to secure this same information. Both parties are entitled to discovery of all evidence relevant in assisting them in the presentation of their claims.

## II. FBI Interviews With Potential Grand Jury Witnesses.

At issue within the FBI report are the purportedly prepared statements drafted by three grand jury witnesses that state they (1) were drafted in contemplation of being read to the grand jury and (2) summarized the information provided to the FBI agents who interviewed them. The court will address each statement individually.[2]

Witness A.

Witness A was interviewed by FBI agents three times. The first interview was on November 13, 1979, the second January 10, 1980 and the last was on January 15, 1980. This person was represented by counsel[3] at each interview. The summary of these interviews are not the by product of any grand jury process but the result of an independent investigation by the FBI. As the holding in *Catania* indicates, independent investigation, even if undertaken with a view toward presenting the information to a grand jury, does not make it grand jury material.

The FBI report also contains a statement prepared by witness A that states it was done so with the intent of reading it to the jury. Defendants believe this prepared

**1.** The government is not accused of abusing the process, nor does the court suggest that abuses occurred.

**2.** The witnesses will be identified by the letters A, B and C.

**3.** Counsel was provided for by RDL, Inc.

statement is grand jury material. The court disagrees for these reasons.

First, the statement is not signed or dated so the government has no insight into whether it was ever presented to a grand jury. Second, the statement summarizes the same information provided to the FBI during its interviews with the person. No additional information on the defendants is included in this statement. It's inclusion within the FBI report does not aid the plaintiffs nor provide a detriment to the defendants since the information was available from the investigative summaries derived from the previous interviews.

This unsigned and undated statement is not grand jury material, it was not derived from the grand jury process and even if it were, in light of the fact that the same information was already in the possession of the government, it is but harmless error that it was included in the report.

Witness B.

Witness B was interviewed on February 6, 1980 by the FBI. A detailed summary of the interview was prepared by the agent. It appears from a notation within the FBI report that this witness testified to the grand jury approximately six months later on June 19, 1980. The information derived from the February 6, 1980 interview is the product of an independent investigation and not grand jury material. This witness also prepared a statement to be read to the grand jury summarizing the information provided in the February 6, 1980 interview. The statement according to the FBI was signed on June 19, 1980 and the original is on file in a local FBI office. The information in the unsigned and undated document is the same as provided the FBI on February 6, 1980. For the same reasons as stated for Witness A, the court finds that this information is not grand jury material.

Witness C.

As with the previous two witnesses, the circumstances surrounding the FBI investigation are similar. Witness C was interviewed twice, the first time being January 10, 1980 and the last time was on January 15, 1980. The FBI report indicates that an original of the unsigned and undated prepared statement summarizing the information from the two interviews is on file in a local FBI office. It is signed by the witness and dated June 19, 1980. As with the previous two witnesses interviews and statements, the court finds that the interviews are the product of an independent investigation and that the unsigned and undated statement is not grand jury material.

For these reasons, we will uphold the Magistrate's findings in the Report and Recommendation that the material derived from the FBI investigation is not grand jury material and that this civil action is not based on the unsigned and undated statements.