Carmen **MARRERO–HERNANDEZ**, et al., Plaintiffs,

v.

**ESSO STANDARD OIL COMPANY**, Defendant.

**Civil No. 03–1485 (GAG).**

United States District Court, D. Puerto Rico.

Sept. 18, 2006.

Jose A. Hernandez–Mayoral, Hernandez Mayoral Law Office, Juan H. Saavedra–Castro, Juan H. Saavedra Castro Law Office, Orlando Cabrera–Rodriguez, Rafael E. Garcia–Rodon, Rafael E. Garcia Rodon Law Office, San Juan, PR, for Plaintiffs.

James E. Tyrrell, John McGahren, Latham & Watkins, Newark, NJ, John F. Nevares, John F. Nevares & Assoc. PSC, San Juan, PR, Phv Lawrence P. Riff, Pvh Jason Levin, Steptoe & Johnson LLP, CA, Phv Mariana Aguilar, Los Angeles, CA, for Defendant.

### OPINION AND ORDER

GUSTAVO A. GELPI, District Judge.

This matter is before the court on defendant Esso Standard Oil Company's ("Esso") motion for reconsideration of the court's Cease and Desist order dated April 27, 2006. *See* Docket No. 417. Specifically, Esso moves the court to vacate and dissolve the imposed preliminary injunction because the court erred in its ruling in that: 1) it did not hear, and therefore did not consider, a substantial amount of evidence presented at a subsequent non-injunction hearing; and 2) had the evidence been readily available for the court's consideration, it would have abstained from entering the order under the *Burford* doc-

trine, the primary jurisdiction doctrine, and/or the rule requiring exhaustion of administrative remedies. *See* Docket No. 477. After reviewing the pleadings and pertinent law, the court **DENIES** Esso's motion for reconsideration.

## I. Relevant Procedural and Factual Background

The court defers to its findings of facts included in its initial Cease and Desist order. *See* Docket No. 428. In March 2003, this action was commenced by residents and property owners of La Vega Ward in Barranquitas, Puerto Rico. *Id.* at 2. It is undisputed that at some point a gasoline line from one of Esso's underground storage tanks leaked roughly around the center of La Vega. *Id.* On April 18, 2006, Esso began drilling holes in the ground as part of its remediation activities. *Id.* Shortly thereafter, plaintiffs began to complain of gasoline odors, dizziness, nausea, shortness or breath and headaches. *Id.* Many of the affected plaintiff required subsequent medical attention. *Id.* An Esso representative, accompanied by a PREQB agent, circled the property and noticed strange odors. *Id.* Nonetheless, Esso continued drilling during subsequent days.

After several days of hearing and evidence presented, the court submitted its Cease and Desist order. Specifically, the court found that it had authority to entertain the injunction request because citizens "need not remain passive and let their interests and well-being be affected, because competent agencies, in this case the PREQB, [did] not take measured to protect them." *Id.* at 4 (citing *Torres v. Rodriguez,* 101 D.P.R. 177, 184 (1973)). Given that the injunction was sought pursuant to Puerto Rico's nuisance law, the court found that the plaintiffs satisfied their burden by demonstrating that Esso's drilling activities provoked dizziness, nausea, vomiting and other physical discomforts, constituting a nuisance. *Id.* at 5–6 (citing *Casiano v. Lozada Torres,* 91 D.P.R. 488, 499 (1964)). The court order was immediately entered. *See* Docket No. 417. Findings of fact and conclusions of law were issued forthwith. *See* Docket No. 428.

On May 15, 2006, the evidentiary record was opened again during a hearing related to Esso's request for security relative to the Cease and Desist Order. *See* Docket No. 453. At the hearing, Carlos Figueroa, Global Remediation Manager, responsible for the excavation project, testified as to the expenses directly attributed to the Cease and Desist order. Mr. Figueroa's testimony required the introduction of evidence that, according to Esso, demonstrated its obligation to follow PREQB orders to remediate. *See* Docket No. 477, p. 5. The court later proposed a resolution to Esso's security request, which both sides accepted. *Id.*

On May 26, 2006, Esso filed the present motion. The motion was duly opposed by plaintiffs, and Esso was allowed an opportunity to reply. *See* Docket Nos. 493 & 496. The Puerto Rico Environmental Quality Board ("PREQB") filed an *amicus* brief in favor of abstention, which was opposed by plaintiffs as well. *See* Docket Nos. 532 & 557.

## II. Evidence Presented

Esso's first argument is that after the May 15, 2006 security hearing, the court had an extended record on which to decide the preliminary injunction than it did when it issued the original Cease and Desist order. *See* Docket No. 477, p. 5. Esso argues that the documents introduced at the security hearing involved many of the technical details of the excavation plan, particularly surrounding the issue of odor, noise and vibration mitigation. *Id.* Esso

argues that this plan allows the court to see the extent to which the Cease and Desist order impacts PREQB's authority.

However, several problems arise with this argument. First, the PREQB has submitted several documents in support of its position for abstention. *See* Docket Nos. 545 & 556. Notwithstanding, as expressly acknowledged by the PREQB, several documents are in Spanish, not to be translated into English by the EQB as so required by this court. *See* Docket No. 545, p. 1. Therefore, any Spanish-language documents cannot be considered.

■ Finally, as conceded by Esso, many of the documents presented were written communications and agreements between Esso and the PREQB. *See* Docket No. 477, p. 5. If Esso was an active participant in the preparation of an excavation plan, then why did **Esso** not provide the information at the preliminary injunction hearing? No explanation exists. To permit a party to withhold its objections to a preliminary injunction until such time as it can present the strongest possible case and allow it to then obtain a dissolution of the injunction would be judicially unwise. *See Huk–A–Poo Sportswear, Inc. v. Little Lisa, Ltd.,* 74 F.R.D. 621, 624 (S.D.N.Y. 1977).

Esso had ample opportunity to introduce evidence and call witnesses, and in fact, did. Therefore, in the interests of fairness, the court cannot consider this "new" evidence. Based on the record before it, the court issued the preliminary injunction for demonstrated nuisance. That decision remains the same and the court need go no further in its analysis. Nonetheless, the court makes note of Esso's abstention argument in turn.

## II. Abstention

■ Esso moves the court to reconsider its ruling based on abstention principles and the very delicate balance between federal mandates and administrative processes. Esso gives great weight to the *Burford* doctrine in arguing for abstention. In *Burford v. Sun Oil Co.,* the Court justified abstention because of the presence of both unclear questions of state law and of a need for centralized administration. 319 U.S. 315, 318, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[1] This is not the case here.

■ While *Burford* may be the appropriate vehicle by which to bring a claim seeking injunctive or declaratory relief, it is not the appropriate remedy in this case. First, under the *Burford* doctrine, "[a] federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies ... where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public importance." *See New Orleans Public Service, Inc. v. Council of New Orleans,* 491 U.S. 350, 362, 109 S.Ct. 2506, 105 L.Ed.2d 298 (1989). In this case, the original findings of fact demonstrate that the court took into consideration testimony that an PREQB agent had circled the premises where the gas was smelled. The court also noted that several residents developed dizziness, vomiting, nausea and rash. Notwithstanding, Esso was allowed to continue drilling the holes for excavation. In light of a lack of a coherent state policy, the court reasoned that citizens need not delay in action and risk harming their well-being any further.

---

1. *Burford*'s progeny focus more on abstention when faced with a coordinated state regulatory structure. *See Quackenbush v. Allstate Insurance Co.,* 517 U.S. 706, 727, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996); *Sevigny v. Employers Insurance of Wausau,* 411 F.3d 24, 27 (1st Cir.2005).

Next, the PREQB remained silent throughout the preliminary injunction. The PREQB's failure to ask the court to suspend the proceedings suggested that the agency did not object to the proceedings. In a situation where a responsible state agency chooses not to ask the court to suspend its proceedings while the agency's work is underway, the court is hard pressed to say that the litigation will interfere unduly with specialized, ongoing regulatory schemes. *See DMJ Assoc. LLC. v. Capasso*, 228 F.Supp.2d 223, 231 (E.D.N.Y. 2002). Furthermore, in its *amicus* brief, the PREQB concedes its lack of knowledge of whether a nuisance was created at the site of La Vega Ward. *See* Docket No. 532, p. 11 n. 6.

■ Finally, Esso also briefly mentions the primary jurisdiction doctrine and the rule requiring exhaustion of remedies. Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency. *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). Primary jurisdiction, on the other hand, depends on three factors: (1) whether the agency determination lay at the heart of the task assigned the agency by the legislature; (2) whether agency expertise was required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court. *Mashpee Tribe v. New Seabury Corp.*, 592 F.2d 575, 580–81 (1st Cir. 1979). The consequence of the applicability of the exhaustion doctrine as opposed to the primary jurisdiction doctrine is that ordinarily a court will stay further judicial proceeding when a party is seeking an administrative ruling under the primary jurisdiction doctrine. *Reiter v. Cooper*, 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). If the doctrine of exhaustion of administrative remedies is applicable, however, the judicial proceeding will be dismissed. *Id.* at 269. Neither of these tenets apply to the case before the court for the same reasons stated above. Furthermore, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990).

## III. Conclusion

For the aforementioned reasons, Esso's motion to reconsider (Docket No.477) in hereby **DENIED.**

**SO ORDERED.**